The first appeal for argument this morning is United States v. Kelerchian, No. 18-1320, and we'll hear first from Ms. Conner. Good morning. May it please the Court, I am here today on behalf of Appellate Defendant Vahan Kelerchian. We've had very extensive briefing in this case, and there are a number of issues that are addressed. I would like to first take up the issue of Count 2, and Count 2 is the 18 U.S.C. 371 allegation involving the laser aiming devices. This is an extremely important issue, not only for our circuit, but for all circuits around the country, because we've often heard discussion about concerns that 371, without a substantive offense attached, gives the prosecution unbridled discretion in terms of its allegations. And this case is, in fact, a case that demonstrates that. Specifically, federal crimes are solely creed to their statute. Yet in this case, we do not have a federal statute that prohibits the possession, transfer, possession of the laser aiming devices. We have no regulation that specifically makes it a crime to possess, transfer, sell, in any way, laser aiming devices. But what happened is the government relied upon language in private letters that were written to a corporation, Insights, in which the FDA indicated that in exchange for some variances from the standards that they had imposed, that the laser aiming sites could only be sold to military and law enforcement personnel. Now, the government has said that those letters are available. They're very difficult to find. They were very difficult to find for the defense. But, Counsel, your client wasn't charged with violating or conspiring to violate the variance or thwart the FDA's regulatory authority through the variance. I mean, the FDA has the authority to regulate the sale of these lasers, right? And hasn't the FDA essentially said they're dangerous and should not be sold at all, but then made an exception for their sale to law enforcement? Well, my answer is twofold to that, Your Honor. First of all, it is correct that in the indictment the word letter was never used.  The word letter, which is restricting to military and law enforcement agencies only, comes directly out of the letters that were issued to Insights. Also, as I indicated in my reply brief, that statement, restricting the sale of laser aiming devices to military and law enforcement personnel, appears literally a dozen times in reference to the indictment. And it also is quite clear from the government's bill of particulars that, in fact, it was relying on the variance as it appears in the letters. So under those circumstances, even though the letter itself was not cited in the indictment, it's very clear that, in fact, the government was relying on the letters. Because absent the letters, Your Honor, the only other thing that includes similar language is the private IR disclosure document that was an Insights document that Mr. Kalerchian forwarded to others and was signed. Is the import of your argument that the defendant was unaware of what he was charged with? Are you making a notice point, or are you making a point that his conduct did not constitute a federal criminal offense? Yes, I'm making the point that under 371, when we look at what the lawful government function is, that the government, in this case, in their charging document, went too far. Because we have no law, we have no regulation that meets the criteria that was set out in the indictment. The concept of restricting to law enforcement and military personnel is only found in the letter. And in every aspect of the charge as to count two, again, the government is alleging that Mr. Kalerchian and his alleged conspirators had somehow undermined that FDA function. But again, if we look to function, and what does it mean to be a government function? Certainly, relying on a letter that hasn't gone through the APA and that has not become a regulation and has not been adopted by Congress as a law should not be permitted under due process grounds for that, in fact, to be a grounds as a function. I would understand your point if what he had decided to do was bring an APA challenge so that he could get an injunction prohibiting the FDA from imposing these restrictions. He might win, he might lose, but he didn't do that. Instead, he and his confederates seem to have decided, well, we'll just tell the company what they want to hear and claim and lie about being law enforcement as the buyers. Well, first of all, the laser aiming devices were sent to the Lake County Sheriff's Department and did go to Mr. Slusser, who was the armorer. I understand that those clearly were for personal use, and then they were divvied up among different people. But the question becomes is that is it a valid government function under 371 when, in fact, the government is relying on an FDA policy? And that is our premise, that this was... the Administrative Procedures Act issues as part of your defense to the criminal charges. I want the court... We have to decide the validity of the policy that they conspired to evade. Actually, the court doesn't need to do that, because when we look at Mead, what Mead tells us is that letter does have significance between insight. In Mead, we had the customs letter. The customs letter was issued, and the private company who received that letter may have contractual obligations to the Customs Department based on that letter, but that letter does not have the force of law and therefore could not have been used under 371 as a lawful function by then, the customs agency, in order to pursue a 371 allegation. Counsel, let me ask you this question. I mean, I thought that the FDA had passed regulations making it unlawful for manufacturers to sell lasers of this type anyway. And then Insight had this variance letter saying, okay, but we're going to create an exception for you. So as far as your client knew, there was just a flat van on these. What you're talking about is a variance, right, that permitted Insight to sell them? There is no evidence that you could attribute knowledge of a flat van. It was in the CFR. Well, the CFR allows the FDA to grant variances and to put conditions on those variances under 360 KK. However, it is a stretch to say that they were banned. They were allowed to be produced, and they were being produced. These items can be found all over the Internet. These are not items that cannot be found. But how could it not be thwarting the FDA's regulatory functions if the regulations say that the FDA, that these are dangerous things because they can cause damage to eyesight, et cetera, that the FDA can regulate them and prohibit their sale except in certain circumstances, even if he didn't know that Insight had been specifically granted a variance? I guess I still just don't see what the complaint is here. Well, first of all, the complaint is that the FDA does not have the power to legislate. And there is nowhere in any regulation or in any law that says that the FDA has the right to prohibit a certain group from using the lasers unless they've gone through the proper procedure. The concern that I have is the question that Judge Hamilton is raising. You're talking here about a criminal offense. Yes. And the facts seem to indicate that your client and at least two police officers were using county sheriff's department letterhead to make the manufacturer of these devices believe that they were being bought by a municipal police department. The whole point of all of that, I think, as the government will say, was to deceive the regulators as to who the owner of this, who the acquirer of these laser-aiming devices were. Well, the problem is that... Isn't that the fraudulent scheme? Well, that's what the government would argue, that it was. However, when we talk about... And they put on evidence at trial. They put on evidence in trial. They did. But there was no evidence and there's no statement in the indictment that shows that that was directed at the FDA, that the fraud is directed at the FDA. Now, and under Tanner... Hold on, hold on, hold on. I'm sorry. Count 2 expressly says, between in or about, et cetera, et cetera, to defraud the Food and Drug Administration by interfering with and obstructing the lawful government functions of the FDA 2. And then it goes on to say, limit the sale of various restricted laser-aiming sight devices to the military and law enforcement. It is very clear that the charge was a 371, with the allegation being the attempt to interfere with the FDA's regulation and imposing a restriction on these items. There's no question of that. My point is that under Tanner, it's not merely the allegation, but there must be some evidence that, in fact, this was directed at the FDA. And the indictment does not provide that. Even in the factual allegations in the indictment... Why did they use the sheriff's letterhead to buy the devices? Well, I understand that the point would be to let Insights believe that it's going, and it's not going anywhere else, because it did go to the sheriff's department, but that it wasn't going anywhere else. But the question becomes whether or not that's directed at the FDA. In Tanner, we actually had a banking relationship with a loan coming from the federal government, and the activities were alleged to have undermined the rules set out in that loan. Here, even if the actions of the defendants goes against what the FDA's policy was, that does not, under Tanner, establish that, in fact, the fraud is directed at the FDA. And we did raise that in our paperwork. We raised both the issue of dismissal, and we also had a Rule 29 on the same issue. So I would urge the court to consider the language that abounds in our brief, that a civil or criminal statute that makes a purely private transaction criminal has to have some basis, something greater than an agency policy. Otherwise, we open up our citizen's tree to virtually any type of allegation. Counsel, why isn't the regulation that presumptively prohibits all such sales a sufficient basis for that? Your Honor, I believe that the regulation allows them to control certain allegations. I don't believe that it wholly prohibits. It gives them the power to do so, doesn't it? It gives them the power to regulate. To say to a company like Insight, no, you can't sell this. Now, there may be regulatory legal issues about the uses of these variances and so on, but my real stumbling block with your position here is the self-help by fraud. I understand the concern of the court. I am focusing, though, on what was charged. What was charged is that he undermined the FDA because he obtained items that were restricted to law enforcement and military personnel. That is intertwined with the entirety of the charge. That cannot be a legitimate basis for the charge because that can only be found in agency policy that has not gone through the APA and has not been determined to be a civil or statutory violation of law. Also, I think it's important to note that the FDA only has control over the manufacturer. There is nothing in the statutory or regulatory steps that are provided, including 360 KK, which extend that control beyond Insight's. Once those items leave Insight's, there is absolutely no indication of any control that the FDA has over them. I'd like to talk, if we may, about Count 1. We also have a motion to dismiss on Count 1. The government charge that Mr. Kalerchin and others had conspired to make misstatements, fraudulent statements or false statements, that appeared in the records of what would be interpreted as under 924C that had to be kept by an agency making sales. Our premise is that 924A1A does not apply to this transaction. Because they're machine guns. I beg your pardon? Because they're machine guns, right? Because they're machine guns. My question for you, counsel, is suppose somebody has a felony conviction and is in possession of one of these Heckler & Koch machine guns. May that person be convicted under 922G1 of being a felon in possession of a firearm? Yes. If they had a machine gun? Yeah. One of these guns. Well, yes, they could. Okay. Because it would be in violation of that portion of the statute. Is there a different definition of firearms that applies to 922A? Yes. There is a difference. If I could go back to the history of these statutes. The NFA, which appears in the chat, is 26 U.S.C. 5801. You're talking about the act from the 1930s? Yes. It goes back to the 1930s. The Gun Control Act is not added until, I believe, 1968, and the 922O is not added until 1986. It's very clear in the NFA that the addition of the GCA is not in lieu of any provisions of the NFA. The control over the sale, importation, and transfer of firearms falls under 28 U.S.C. 5801 in sequence. Both of those provisions include a similar provision that says, under this chapter, false statements can be prosecuted. 924A1A is intended for those firearms that fall under GCA. The 5801 in sequence provision is what controls the sale of a machine gun. So a person could not be convicted of being a felon in possession of a machine gun under 922G? I have actually never seen anyone charged under 922G. That's not my question. Yeah. It's the same definition for the whole chapter for a firearm under the 1968 legislation, correct? It's part of 921A3. It is. It surely is broad enough to include machine guns. Honestly, Your Honor, I think I might challenge that because the proper statute would have been 922O for illegal possession. That's not my question. 922G1. You've defended scores of those cases, right? Yes, I have. You know it very well. Suppose it's a machine gun. Now, maybe the government could bring other charges, but your statutory argument seems to imply that that may not be charged under 922G1, and that just seems highly unlikely as a reading of the statute. I don't think that the question, Your Honor, is the crucial issue because with the addition of 922O, 922G, and prohibitions in terms of possession of certain weapons, Your Honor, that doesn't address the issue of the registration, transfer, and sale of those items, which is referred to in 924A1A. The problem you have with that argument as I see it is that 924A1A explicitly links to 922B5. 922B5 is a provision in the Gun Control Act. 922B5, in turn, imposes the very record-keeping requirement that it is the heart of the government's allegation here. So it may be that the National Firearms Act also regulates machine guns, but I don't see how in the world you take it out of the Gun Control Act. Your Honor, even the licensing that goes along with a dealer who can sell machine guns falls under the NFA, and those are the documents referred to. It may. I think when you focus on the NFA, the only, I think, at least to persuade me, you'd have to say that 924 in its entirety, including the enhancement provision that the government points to, and 922 do not regulate machine guns in any way, shape, or form. And I don't know how you can do that. The reason that can be done is because under 26 U.S.C. 5801 in sequence, including the 478 provision... Why are you focusing on that statute? I'm sorry? Why are you focusing on a different title? Focus on Title 18. Title 18 does not include the specific provisions that are necessary for the purchase or to be held by a dealer for a machine gun. It talks about the various requirements of an over-the-counter in terms of what we use for the 4473. There's no dispute that there is no 4473 in a machine gun. The reason I was going back to 47901 is that under the CFR, though it does say that some of the provisions of 478 apply, it says that in fact 47901, which is 26 U.S.C. 5801, controls all aspects of importation, transfer, registration of a machine gun. Those all take place under 5801. It's not impossible by any means that certain provisions of a statute would apply and certain would not. Throughout the statute under 921 sequence, there are exclusions of machine guns. There's exclusions of machine guns in terms of the ability of the Attorney General regarding importation. There's exclusions specifically under the definitional setting. We know for sure, do we not, that 924C1B imposes an enhancement if the firearm used during a crime of violence was a machine gun? Yes. So that's one example of Congress including a machine gun within Title 18. Yes, and there are several. That's a serious problem for your position. Well, I don't think it is because if we look at the history behind these provisions that are criminalizing based on machine guns, though they fall under 921 sequence, those have not changed the transportation, registration, importation provisions, which all fall under 501. The charge that's being charged is a false statement kept in the course of the records. Under this chapter, those records would have to fall under 5801 because that is where the records regarding transportation and importation and possession lie. Ms. Conner, can I ask you briefly to address a question concerning the money laundering charges? Yes. Specifically, the government cited page 46 of its briefs, decisions from the Fourth and Fifth Circuits, Halstead and Kennedy. I didn't see that you addressed those in your reply brief. I wonder if you had thoughts about them. Yes, I do. If I'm remembering the correct section, this is where they're talking about the difference between the check and what they're claiming now is the transaction, if I believe I'm correct on that. First, I would point out that in this case, the government did not argue in its closing, as the government is arguing in its brief now, that the transaction at issue was the e-mails or the purchase of the machine guns. It's specifically argued by the government that, in fact, it was the check that formed the basis for the wire fraud. In fact, the prosecutor actually says the only difference between the 1957 and the 1956 allegation is there's no concealment required. We question whether or not there's any real evidence on the basis of the wire fraud as now alleged because, Your Honor, as I've cited in our reply brief, there is no property interest in the purchase of the firearms. And what we have here are alleged statements of fault that are allegedly false in regard to the licensing and transfer of those items, not the actual purchase. And so under the case law I cited in our reply brief, in fact, that argument must fail. Okay. Thank you, counsel. I'll give you a moment or two for rebuttal. Mr. Whalen? May it please the Court. Good morning, Your Honors. My name is Nathaniel Whalen. I'm here on behalf of the United States of America. In count one, Mr. Clerkin was charged with conspiring to make false records under the Gun Control Act. His position is machine guns are not firearms under the act. He says in his reply brief on page three, the 922-0 prohibits the possession of machine guns and says, and I quote, transfers of machine guns, including the importation, are not governed by the Gun Control Act. 18 U.S.C. 922-0 says it shall be unlawful for any person to transfer or possess a machine gun. The Gun Control Act clearly governs the possession and transferring of machine guns. As Judge Hamilton pointed out, as soon as you're a felon in possession of a machine gun and you're punishable under 922-G, that concession, I think, is the end of this argument. As Judge Scudder properly pointed out, there are a lot of enhancements under the Gun Control Act when the firearm is a machine gun. As Congress drafted the statute, they intended a machine gun to be part of the definition of firearms. All machine guns are firearms. Not all firearms are machine guns is basically what this boils down to. Can I ask you a question about the money laundering? Yes. So if you could walk me through this. So if I'm understanding it properly, the guns were the proceeds of the sale? Is that how this goes? So the wire fraud was complete at the time the false purchase order that's representing the real purchaser is sent to H&K. Then the guns come back. They're broken down and converted into cash, which is sent to the defendant in the form of cashier's checks. And I understand you're arguing about the concealment. So the gun is the initial in-kind, that's the property in-kind, the value that's then laundered as it's turned into the cash in the cashier's check? Am I following it correctly? No, Your Honor. And I'm sorry if I didn't clarify that enough in our briefs. The wire fraud is complete when they send these forms to H&K. And they say to H&K, we are entitled to these machine guns because we're law enforcement agencies. The second they send that, that's complete. Now, under the money laundering statute, it says you need to deal with the proceeds of the specified unlawful activity, namely that wire fraud. The proceeds come about when they get the money from Adam Webber. So they get the guns, specifically Slusser. He then takes them apart. He sends the gun parts to Adam Webber. Adam Webber sends the proceeds of the illegal wire fraud to Slusser. So the money is the purchase price for the parts that they've sold from the machine guns to Webber. The money is the profit of the parts they sold of the machine guns. That's correct, Your Honor. And who's the victim of the wire fraud? The victim of the wire fraud, I think, would probably be arguably both H&K and the ATF. So, could you address the problem of property interests and the Volmer and Bruchhausen cases? Sure. Your Honor, I don't think we have a problem with property interest because the property is the actual machine guns themselves. What property interest does the government have in those? I think the government has the property interest in making sure that these actually go to a legitimate purchaser. Didn't Bruchhausen and Volmer say that's not a property interest? It's a regulatory interest, but not a property interest. I don't know that the government or the victim needs to have a property interest for the purpose of money laundering, Your Honor. And I think that's probably where I'm in somewhat of a dispute with Mr. Polerchian here. Admittedly, I have not briefed the issue, Your Honor, because this is the first time it was raised. It was raised in response to your arguments. I've got to say the money laundering here is a trip into metaphysics. Because the wire fraud scheme can end at various points along the way. The government will often charge that the subsequent acts to realize the proceeds and conceal them and so on are all part of the acts of the wire fraud. They may not be essential elements, but they're often charged as part of the whole scheme. This has a kind of kaleidoscopic shifting quality to it that troubles me. Your Honor, I don't think it's a shifting position. I think this has been our position throughout, that the wire fraud is complete as soon as the... I'm not talking about shifting in this particular case. I'm talking about across a whole class of cases where wire fraud is complete or continuing depending on whatever works best for that particular case. Your Honor, I think that this... I guess I'm not sure what Your Honor's concerns are. I'd like you to address Volmer and Bruchhausen. In terms of the property interest, Your Honor? Yes. Either tell me they're wrong or tell me they don't apply or distinguish them or something. Well, I don't think they apply because I don't think the victim needs to have a property interest in order for the money laundering provision to apply. Hold on on that though. In Volmer, in Volmer, our court summarized McNally, the 1987 U.S. Supreme Court decision. We said as follows, McNally requires that the government allege and prove as an element of the offense of mail fraud that the defendant deprived the victim of a property right. That's correct, Your Honor. I think that's what Judge Hamilton's getting at. Well, we don't need to prove that the fraud was actually completed under the wire fraud. 18 U.S.C., and I apologize, I think it's 1343 or 1341, whichever is the wire fraud, doesn't require that the fraud be completed and the victim actually lose the property. The point is, what the government,  right? That does have to be the goal, Your Honor. And they were trying to steal, they were defrauding. They were paying the manufacturer. And Bruchhausen and Ann Volmer deal with this question about whether a seller has a property interest in what happens with the property after it's sold. It's not that it's any less illegal for different kinds of reasons. There are other ways to prosecute it, but it's a problem prosecuting it as a wire fraud and then using it as a hook for money laundering and then you can make them both conspiracies. And we're in a pretty hazy territory, so I would just like the clearest linear explanation of your money laundering theories that's possible. Well, I think the clearest, and I'll do the best that I can, Your Honor, to explain. The theory the government prosecuted this on was when the defendants submitted these purchase orders, thereby causing H&K to unlawfully get rid of these guns. H&K violates the law, unknowingly, when they transfer these firearms to the defendant and his co-conspirators. At that point, the defendant and his co-conspirators take the guns, they send them to Mr. Weber, knowing that he's a prohibited person. He can't have these guns. They then receive the back from Mr. Weber, and as it relates to the 1957 charge, the proceeds are above $10,000. I don't think that's in dispute. As it relates to the 1956 charge, that relates to the second gun sale, and that's the government's argument that they concealed the source um, and I don't have the exact language, they concealed the proceeds, the nature of the proceeds. That is the theory that the government went under on count nine, Your Honor, and we believe there is sufficient evidence to support the jury's verdict as it relates to that count. I'm taking your facts at face value, okay? You won the verdict, and I get all that, I think. But I'm still struggling with um is it the fact that they misled H&K into making an illegal sale that amounts to wire fraud? There The attempt to sending the documentation to get H&K to make the illegal transfer. That's the wire fraud. That, I believe, is the theory we proceeded under. That's correct, Your Honor. Okay. So, how do we deal with Vollmer and Bruchhausen that say in that kind of a situation, at least as I understood them, maybe I'm wrong, but that wire fraud doesn't actually fit that because there's no property interest. There may be other legal and regulatory interests, but no property interest in the later disposition of those firearms. And by later disposition, Your Honor, I think you mean the subsequent transactions with Weber? Yes. Your Honor, I don't understand that the money laundering count requires that the victim have a property interest. The question is whether there are proceeds from the specified unlawful activity. Judge Scudder just read to you from that. That's correct, Your Honor. If you don't want to answer my question and want to leave me on my own, I'm okay. I'll do my best. I apologize. No, I'm trying my best to answer your question, Your Honor. I think we're dealing with two different issues, right? There's the money. There's the wire fraud. And the victim, in this case, was forced to enter into  and dispose of these firearms illegally because of the defendant and his co-conspirators' acts. That's the wire fraud. Now, whether the victim has a continued possessory interest in the guns after that, I don't think is a relevant question under the money laundering statute. Because now we're dealing with the proceeds of the wire fraud, the illegally gained materials as a result of the wire fraud. Right? So if I get guns illegally from Your Honor, you are the victim in that you've transferred guns to me illegally. You're the victim of the wire fraud. What I do with them after that is, in this particular instance, what I'm doing is I'm trying to obtain and acquire, well, I'm making proceeds as a result of that sale. I don't know that your possessory interest, after you give them to me, is relevant at all under the money laundering statute. Would your response to the McNally point be that the manufacturer has a property interest in the guns before the sale? And that's what it's led to give it's defrauded into giving up. I believe that's correct, Your Honor. And I apologize. I'm not trying to avoid the court's questions. I'm answering the best I can. Look, you guys chose to charge this in this kind of, you know, a cloud inside a cloud with a conspiracy money laundering conspiracy to deal with proceeds from it. We've got some very concrete crimes that occurred here with the transfer of dozens and dozens of machine guns. I agree with that, Your Honor. And that is a point that this court should consider that this was charged as a conspiracy. It doesn't make it easier. Well, Your Honor, it does make it easier in that the court doesn't have to determine that there was actually the wire fraud and the transfer of the legal proceeds. The question is whether they conspired to transfer, whether they conspired to violate the money laundering statute. And that's what 1956H talks about. You did, however, prove the transfers and the wire transmissions. That's correct, Your Honor. We did. No, I understand, Your Honor. I understand Your Honor's points. I think this probably could have been charged as a substantive money laundering count. It was not, though. It was charged as a conspiracy. And there was sufficient evidence on that. Unless the court has any questions on the money laundering. One more. Yes, sure, Your Honor. Under your theory, three people rob a bank. They get into the vault. They make off with $100,000. The bank robbery has been completed at that point. They get back to their staging area and divvy up the money. Is that money laundering? Transactions of more than $10 with the proceeds of designated illegal activity. I think you've run into a bit of an issue with the Santos opinion in that case, in that you're kind of taking the unlawfully it's the cost of doing business is this particular No, it's not Santos. That statute was amended. That's correct, Your Honor. It sure feels like it's part of the bank robbery. But your theory here would seem to suggest that it's a separate crime of money laundering when the bank robbers divvy up the proceeds. Your Honor, and I apologize. I'm not trying to be evasive. I'm not sure I can answer that question right now without looking into it a little more. What I will tell you is that our transaction is slightly different in that you're not just in Your Honor's case, I think you said $100,000 and divvy them up. You're not just divvying up the cost of the guns. You're not divvying up just what you acquired. You're divvying up the proceeds above and beyond that as it relates to our transaction. Weber is giving them an extra $10,000 on top of the fraud. I think it's that $10,000 there that violates or it's $11,600, I think. That's what violates 1957 and that's where the conspiracy to money launder under 1957 is. Your Honor, let me go back to some of the arguments on count two the defendant made. The defendant said there's no crime to transfer these laser sites anywhere. 21 CFR 1040.11b which we cite in our brief, says that these particular laser sites, which are class 3B, very strong, very it can't be permitted for human access, is what the regulation says. That is a complete prohibition, as Judge Barrett pointed out, in putting these sites into the market. The FDA, pursuant to its regulatory scheme, has said these sites cannot go into the market. Humans cannot have access to these, except when we grant a variance. And the variance in this case is not what the defendant's charged with, I think, as Judge Barrett pointed out. The variance is a manifestation of the FDA's power. The FDA has the authority to do what it did and Mr. Klerchian has been challenged that the FDA can regulate these sites to law enforcement. So within that greater power to create a variance to this complete ban, the FDA necessarily has the power to create a variance as to law enforcement only. That's what they did in this case. And the evidence is overwhelming that Mr. Klerchian and his co-conspirators knew about that ban before they entered into the transactions. Mr. Klerchian tells Mr. Slessor that these are prohibited. Only law enforcement can have them. But we are here on a motion to dismiss the indictment as to whether the indictment states a federal offense. And so you don't even have to look at the evidence in this case. You just look at the allegations in the indictment. This does state a viable federal crime. Your Honors, let me quickly address the arguments in Counts 3 through 7. This is about the demonstration letters. As your Honors know, these machine guns are restricted to law enforcement agencies. But ATF, pursuant to its regulations, has kind of created another exception, where if a dealer gets a law enforcement agency to send a letter to ATF saying  or I'm sorry, the law enforcement agency is requesting a demonstration, ATF can transfer that machine gun to the dealer, and the dealer gets to keep it. We agree with Mr. Klerchian whether or not he does the demonstration. But what Mr. Klerchian was charged with is that he aided and abetted Deputy Chief Kumstar in preparing these letters that are requesting demonstrations when he had no intention of giving a demonstration and the Lake County Sheriff Department had no intention of having a demonstration. His only argument on appeal is there's insufficient evidence to find that these were a request for demonstration. We went through the letters in our brief. A jury could reasonably find that they were a request for demonstration. However, the jury could also listen to the defendant's own words on page 1872 when he says these are requests to demonstrate, or 1971 when he says these are requests for a demonstration. There's sufficient evidence to support those counts as well. Your Honors, I'm happy to provide jury instructions or closing arguments. I think those are the only issues that we haven't addressed. But if this Court has no further questions, we would just ask that you affirm Mr. Klerchian's convictions across the Board. Thank you. Thank you, Mr. Whalen. Ms. Connor, two minutes for rebuttal. If I may, I'd like to pick up on the money laundering for a moment. The jury was probably confused by this as well, but the way that money laundering is charged, the underlying offense is wire fraud. Even though that's coupled with the government does not have to prove that in fact the wire fraud was achieved, the government does have to prove the intention to complete each element of the substantive offense. And clearly as we've discussed under Volmer and McNally and other cases, in order to have a wire fraud or a mail fraud, they're interchangeable, the government has to prove a property interest. So why isn't Heckler & Koch's property interest in the guns before they're sold sufficient? Well, Your Honor, I question whether or not they proved a property interest before they were sold. They were the manufacturer. How's that even an issue? Well, actually under the case law we cited to the Court, there was a question about whether the manufacturer does in fact have a property interest. There's a question about whether the manufacturer has a property interest in what happens to the property after it's exported or sold in the arms control cases, right? But what about simply being conned into making the sale in the first place of property that the manufacturer owns? Your Honor, I would argue that the paperwork that was sent to H&K was merely regarding the licensure in order to transfer. H&K wouldn't make that sale without that paperwork, would it? No, they wouldn't. They have to, under the 5801, obtain that paperwork in order to transfer the machine guns. But the question becomes if the Court declares that that's a property interest, then under any circumstances where an item is purchased, that would be a property interest, even if the nature of the wire transfer is related to licensure. And so I think that's really... The theory would simply be that somebody who is not supposed to be able to buy this article, whatever it may be, lied to the manufacturer through a scheme to use the mails or wires to defraud them into making a sale they otherwise wouldn't have made. But, Your Honor, I really think that the government's arguing what did happen after the guns were delivered. Because the guns did go to the Lake County Sheriff's Department. The Lake County Sheriff knew about the guns going to the departments. What happened with them afterwards? And so I think that's an important distinction. I would just like to very quickly state that I think that the problem that we just discussed regarding 371, the substantive allegation under 1343, is what was problematic regarding the jury instructions on 371. Because the government with the courts permitting it was allowed to take out those aspects of the substantive offense that the jury had to find there was at least an intention to commit. The instructions that were given... I think we have that in your briefs. Thank you to both counsel and the case will be taken under advisement.